UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |
|---|---|---|
| ZHEJIANG JUNYUE STANDARD PART CO., LTD. | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Ct. No. 20-00102 |
| UNITED STATES | ) ) ) | |
| Defendant. | ) ) ) | |

## COMPLAINT

On behalf of Zhejiang Junyue Standard Part Co., Ltd. ("Junyue"), a Chinese producer and exporter of Carbon and Alloy Steel Threaded Rod, we hereby bring this civil action and allege the following:

### Parties

1. Junyue is a privately held company organized under the laws of the People's Republic of China ("China"). Junyue exports Carbon and Alloy Steel Threaded Rod produced by itself subject to the countervailing duty Order on Carbon and Alloy Steel Threaded Rod from China, Investigation No. C-570-105.

2. Defendant is the United States of America, acting by and through the U.S. Department of Commerce (the "Department").

### Jurisdiction

3. This action is brought pursuant to 19 U.S.C. §§ 1516a(a)(2)(A)(i)(II) and (B)(i), to contest the Department's final affirmative determination under 19 U.S.C. §1671d, in the countervailing duty investigation of Carbon and Alloy Steel Threaded Rod from China.

1

*See Carbon and Alloy Steel Threaded Rod From the People's Republic of China: Final Affirmative Countervailing Duty Determination,* 85 Fed. Reg. 8,833 (February 18, 2020) ("Final Determination") and *Carbon and Alloy Steel Threaded Rod From India and the People's Republic of China: Countervailing Duty Orders,* 85 Fed. Reg. 19,927 (April 9, 2020) ("CVD Order").

4. Accordingly, this Court possesses jurisdiction over this action pursuant to 28 U.S.C. § 1581(c) and 19 U.S.C. § 1516a(a)(2).

## Standing

5. Plaintiff is a foreign exporter of subject merchandise that participated in the investigation resulting in the contested determination as a mandatory respondent. Accordingly, Plaintiff is an interested party within the meaning of 19 U.S.C. §§ 1516a(f)(3) and 1677(9)(A).

6. In addition, because the Department made a Final Determination that overstated Plaintiff's countervailing duty margin, Plaintiff has been adversely affected or aggrieved by agency action within the meaning of Section 702 of Title 5 of the United States Code. Therefore, Plaintiff has standing to bring this action under 28 U.S.C. § 2631(c).

## Timeliness

7. Notice of the CVD Order was published in the *Federal Register* on April 9, 2020. Plaintiff filed a summons instituting this action on May 11, 2020, the next business day from Saturday, May 9, 2020, which is thirty days after publication of the aforementioned CVD Order, serving notice of the action upon all other participants in the investigation

on the same date. Furthermore, Plaintiff is filing this complaint on May 11, 2020 and therefore, as required, within thirty days after filing the aforementioned summons. Therefore, Plaintiff has commenced this action within the time limits specified in 19 U.S.C. § 1516a(a)(2)(A), 28 U.S.C. § 2636(c), and Rule 3 and Rule 6 of the Rules of this Court.

## Statement of Facts

8. The Department initiated a countervailing duty investigation of Chinese exporters of subject carbon and alloy steel threaded rod on March 13, 2019. *See Carbon and Alloy Steel Threaded Rod From India and the People's Republic of China: Initiation of Countervailing Duty* Investigations, 84 Fed. Reg. 10,040 (March 19, 2019).

9. On April 10, 2019, the Department selected two mandatory respondents, *i.e.*, Chinese exporters whose individual data would be reviewed as a sample for all other cooperating exporters. *See* Dep't of Commerce, re: *Countervailing Duty Investigation of Carbon and Alloy Steel Threaded Rod from the People's Republic of China:* Respondent Selection Memo (April 10, 2019). Junyue was one of the two mandatory respondents. The Department issued its initial questionnaire to Junyue on the same day, April 10, 2019.

10. On July 29, 2019, the Department published its affirmative preliminary determination and calculated a 24.89 percent subsidy rate for Plaintiff. *See Carbon and Alloy Steel Threaded Rod From the People's Republic of China: Preliminary Affirmative Countervailing Duty Determination and Alignment of Final Determination With Final Antidumping Duty Determination*, 84 Fed. Reg. 36578, 36580 (July 29, 2019) and accompanying Decision Memorandum (July 22, 2019) ("Prelim DM").

11. In the Preliminary Determination, the Department assigned the 10.54 percent total adverse facts available rate for the Export Buyer's Credit loan program ("EBCP") to Junyue, even though the Department acknowledged that Junyue submitted evidence to the effect that (1) Junyue never applied for subsidies under EBCP for itself or for its customers, and (2) Junyue's U.S. customers attested to the fact that they never used the EBCP. *See* Junyue Section III Questionnaire Response at 12-13 and Exhibit 10 (May 30, 2020).

12. Junyue timely filed a case brief, arguing that the Department cannot use AFA to find that Junyue used the EBCP merely because the Government of China failed to provide a copy of the alleged China Ex-Im Bank's internal guidelines from 2013 or supply a list of the alleged partner banks/third-party institutions, which the Court of International Trade has ruled in numerous cases is not "necessary information." *See* Junyue Case Brief at 8-11 (Dec. 10, 2019).

13. On February 18, 2020, the Department published its Final Determination. *See Carbon and Alloy Steel Threaded Rod From the People's Republic of China: Final Affirmative Countervailing Duty Determination,* 85 Fed. Reg. 8,833 (February 18, 2020) ("Final Determination") and accompanying Issue & Decision Memorandum (February 7, 2020) ("Final IDM"). The Department continued to find that the Government of China withheld "necessary information," and, as AFA, it found that Junyue benefited from the EBCP. *See* Final IDM, Comment 6.

14. In the Final Determination, the Department found Junyue withheld different information – specifically – "[n]ot until verification did Junyue inform Commerce that [Affiliates A

and B] provided processing and manufacturing services to Junyue for its production of subject merchandise." *See* Final IDM at 44. The Department found that information necessary for ascertaining whether Affiliates A and B are cross-owned affiliates of Junyue is missing from the record. *See id.* at 45-57. Junyue, from its first submission concerning affiliations, had detailed all the control elements among its affiliates, including Affiliates A and B, and had correctly asserted that none of the conditions for control (e.g., 50% or more stock ownership) were present to meet the Department's very high bar for a cross ownership finding. *See* Junyue Affiliation Response at 3-5 (April 29, 2019).

15. The Department nonetheless applied Adverse Facts Available (AFA) to Junyue with respect to affiliation, and found that, "[a]s AFA, we find that Affiliates A and B are cross-owned input suppliers of Junyue……as partial AFA, Commerce finds that Affiliates A and B also benefitted from all of the same programs Junyue benefitted from and that the subsidies they received that are attributable to Junyue are in the same subsidy rates as we calculate for Junyue." *See id.* at 46-47.

16. In the Final Determination, the Department tripled Junyue's subsidy rates (by replicating them over again for each affiliated service/input supplier inferred to be cross owned) for not only domestic subsidy programs but also for EBCP. *See* Dep't Commerce, re: Zhejiang Junyue Standard Part Co., Ltd.; Calculations for the Final Determination at 1 and Attachment 1 (February 7, 2020) (applying a 31.62 percent rate for EBCP to Junyue, i.e., three times the 10.54 percent EBCP AFA rate).

17. Junyue filed a ministerial error comment arguing that the Department made a ministerial

error in the calculated benefit for Junyue's two alleged cross-owned affiliates for the EBCP, as listed above in paragraph 15. *See* Junyue Ministerial Error Comments (February 18, 2020). Junyue pointed to the Department's consistent practice of not double or triple counting AFA program rates for a cross-owned group; and, thus, such over counting constituted mathematical error or inadvertent error resulting in a grossly inaccurate margin. *See id.* at 4-6.

18. The Department denied Junyue's ministerial error allegation on the ground that it did not view the allegation as a ministerial or inadvertent error in its Final Determination but rather as a methodological decision. *See* Dep't Commerce, re: Allegation of Ministerial Errors in the Final Determination (March 4, 2020).

19. This appeal ensued.

## Count I

20. Plaintiff hereby incorporates, by reference, paragraphs 1 through 19 above.

21. The Department's application of AFA with respect to Junyue's use of the EBCP is unsupported by substantial evidence and is not in accordance with the law. 19 U.S.C. § 1516a(b)(1)(B)(i) (the court "shall hold unlawful any determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law . . .."). Junyue demonstrated that it did not use the EBCP, nor did its U.S. customers use the EBCP. The record does not contain any evidence to the contrary. As such, the Department's conclusion that Junyue used the EBCP is unsupported by substantial evidence. Furthermore, the Department's

determination is not in accordance with the law because the Court of International Trade has found in thirteen cases that the Department cannot apply AFA to this program when all parties involved, namely – the Government of China, the Chinese exporter, and the U.S. customer(s) – all attested to non-use of the program and when there is no necessary information missing from the record. *See Yama Ribbons & Bows Co. v. United* States, 2019 Ct. Intl. Trade LEXIS 174; Slip Op. 19-173 (Dec. 30, 2019); *Changzhou Trina Solar Energy Co. v. United States*, 2019 Ct. Intl. Trade LEXIS 138, Slip Op. 19-143 (Nov. 18, 2019) ("*Changzhou V*"); *Changzhou Trina Solar Energy Co. v. United States*, 2019 Ct. Intl. Trade LEXIS 138, Slip Op. 19-137 (Nov. 8, 2019) ("*Changzhou IV*"); *Changzhou Trina Solar Energy Co. v. United States*, 2018 Ct. Intl. Trade LEXIS 179, Slip Op. 18-167 (Nov. 30, 2018) ("*Changzhou III*"); *Changzhou Trina Solar Energy Co. v. United States*, 352 F. Supp. 3d 1316, Slip Op. 2018-166 (C.I.T. 2018) ("*Changzhou II*"); *Changzhou Trina Solar Energy Co. v. United States*, 255 F. Supp. 3d 1312 (C.I.T. 2017) ("*Changzhou I*"); *Guizhou Tyre Co. v. United States*, 2019 Ct. Intl. Trade LEXIS 172; Slip Op. 19-171 (December 26, 2019) ("*Guizhou Tyre V*"); *Guizhou Tyre Co. v. United States*, 2019 Ct. Intl. Trade LEXIS 156; Slip Op. 19-155 (December 10, 2019) ("*Guizhou Tyre IV*"); *Guizhou Tyre Co. v. United States*, 2019 Ct. Intl. Trade LEXIS 114, Slip Op. 2019-114 (August 21, 2019) ("*Guizhou Tyre III*"); *Guizhou Tyre Co. v. United States*, 2019 Ct. Intl. Trade LEXIS 58, Slip Op. 19-59 (May 15, 2019) ("*Guizhou Tyre II*"); *Guizhou Tyre Co. v. United States*, 348 F. Supp. 3d 1261 (C.I.T. 2018) ("*Guizhou Tyre I*"); *Jiangsu Zhongji Lamination Materials Co. v. United States*, 2019 Ct. Intl. Trade LEXIS 122, Slip Op. 19-122 (Sep. 18, 2019); *Clearon Corp. v. United States*, 359 F.

Supp. 3d 1344 (C.I.T. 2019).

## Count II

22. Plaintiff hereby incorporates, by reference, paragraphs 1 through 21 above.

23. The Department's determination that Junyue's cross-owned affiliated companies, Affiliates A and B, benefited from the EBCP is unsupported by substantial evidence or otherwise contrary to the law. *See* 19 U.S.C. § 1516a(b)(1)(B)(i). In the Final Determination, the Department found that Affiliates A and B benefitted from all of the same programs Junyue benefitted from, including the EBCP. *See* Final IDM at 47. Yet, record evidence clearly demonstrates that Junyue's two cross-owned affiliates could not have possibly benefited from this program during the POI. At the early stage of this investigation, the Department placed on the record the import data from the U.S. Customs and Border Protection that would have revealed any participation by these companies in the U.S. market. *See* Release of U.S. Customs and Border Protection Data (March 11, 2019). There is no other record evidence that there were any imports of subject merchandise into the United States from Affiliates A or B during the Period of Investigation. Since Junyue's two affiliates did not have exports of subject merchandise to the U.S., they do not have U.S. customers who can apply for and use the program, and, as a result, they cannot benefit from this program.

24. Not only is the Department's attribution unsupported by substantial evidence of use by the affiliates of EBCP, but the attribution is contrary to law as well. The Department has

8

a longstanding practice to not attribute programs that cannot possibly be used (e.g., the attribution of one province's subsidy to a respondent residing in a different province) even as AFA. Furthermore, as asserted in **Count I**, Junyue did not use or benefit from EBCP. Therefore, the Department's finding that Junyue's two cross-owned affiliates used or benefited from EBCP as a result of Junyue benefitting from that program is likewise unsupported by substantial evidence or otherwise contrary to the law.

### Count III

25. Plaintiff hereby incorporates, by reference, paragraphs 1 through 24 above.

26. The Department's determination to triple the EBCP, to account for Junyue's two inferred cross-owned affiliates, was arbitrary and capricious because the Department normally does not apply EBCP to every cross-owned affiliate of a particular mandatory respondent in past proceedings, even as AFA. The Department acts arbitrarily and capriciously when it "consistently follow[s] a contrary practice in similar circumstances and provide[s] no reasonable explanation for the change in practice." *Consol. Bearings Co. v. United States*, 348 F.3d 997, 1007 (Fed. Cir. 2003). It is well-established that "[a]n agency action is arbitrary when the agency offers insufficient reasons for treating similar situations differently." *SKF USA Inc. v. United States*, 263 F.3d 1369, 1382 (Fed. Cir. 2001) (alteration, quotation marks and citation omitted). Additionally, notwithstanding past practices, record evidence in the instant investigation unequivocally shows that Junyue's cross-owned affiliates did not export subject merchandise to the U.S., and, therefore, were incapable of receiving benefits under the EBCP. *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (holding the agency

decision to be arbitrary and capricious "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."). In short, once having found a group of companies "cross-owned", the Department applies the AFA 10.54% EBCP rate to the group as collapsed; not to each of its constituent companies. The Department's triple application of this non-used program in this instance was thus arbitrary and capricious.

## DEMAND FOR JUDGMENT AND PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment from the Court:

(1) Declaring that the Department's determination to apply AFA and to find that Plaintiff used the EBCP was not supported by substantial evidence and not in accordance with the law; and

(2) Declaring that the Department's determination that Plaintiff's two cross-owned affiliates benefitted from the EBCP was not supported by substantial evidence; and

(3) Declaring that the Department's calculation in the Final Determination to triple the subsidy rate of EBCP to account for Plaintiff's two inferred cross-owned affiliates arbitrary and capricious; and

(4) Granting Plaintiff such other relief as the Court may deem appropriate.

Respectfully submitted,

/s/ Gregory S. Menegaz
_____
Gregory S. Menegaz
Alexandra H. Salzman
J. Kevin Horgan
**DEKIEFFER & HORGAN, PLLC**
1090 Vermont Ave., N.W.
Suite 410
Washington, D.C. 20005
Tel: (202) 783-6900
Fax: (202) 783-6909
email: gmenegaz@dhlaw.com
*Counsel to Plaintiff Zhejiang Junyue Standard Part Co., Ltd.*

Dated: May 11, 2020